UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────

| | |
|---|---|
| PATRICK EGAN, individually and on behalf of TRADINGSCREEN, INC., | **OPINION**<br>**& ORDER** |
| Plaintiff, | |
| v. | 10 Civ. 8202 (LBS) |
| TRADINGSCREEN, INC., TRADINGSCREEN BROKERAGE SERVICES, LLC, PHILIPPE BUHANNIC, SPREADZERO HOLDINGS INC., and SPREADZERO LLC, | |
| Defendants. | |

────────────────────────────


APPEARANCES


*For Plaintiff:*

MANDEL BHANDARI, LLP
11 Broadway, Suite 615
New York, NY 10004
RISHI BHANDARI
EVAN MANDEL
BENJAMIN R. DELSON


*For Defendants TradingScreen, Inc. and TradingScreen Brokerage Services, LLC:*

MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103
MARC J. SONNENFELD
KAREN POHLMANN


MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178

BERNARD J. GARBUTT III
NAMITA E. MANI

*For Defendant Philippe Buhannic:*

CADWALADER WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
DENNIS J. BLOCK
KATE F. SHREEVES

*For Defendants SpreadZero Holdings Inc. and SpreadZero LLC:*

ELLENOFF GROSSMAN & SCHOLE LLP
150 East 42nd Street, 11th Floor
New York, NY 10017
ADRIENNE M. WARD
CHRISTOPHER M. PISACANE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK EGAN, individually and on behalf of
TRADINGSCREEN, INC.,

                Plaintiff,

       v.

TRADINGSCREEN, INC., TRADINGSCREEN
BROKERAGE SERVICES, LLC, PHILIPPE
BUHANNIC, SPREADZERO HOLDINGS INC.,
and SPREADZERO LLC,

                Defendants.

**OPINION
& ORDER**


10 Civ. 8202 (LBS)

---

SAND, J.

      Plaintiff Patrick Egan brings this action against Defendants TradingScreen, Inc. and

TradingScreen Brokerage Services, LLC (collectively "TradingScreen"), SpreadZero Holdings

Inc. and SpreadZero LLC (collectively "SpreadZero"), and Philippe Buhannic.  Plaintiff brings

thirteen claims for relief.  As an individual plaintiff, he alleges against Defendants Buhannic,

TradingScreen, and TradingScreen Brokerage Services a promissory estoppel claim and

violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. §

78u-6, the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), the Delaware Whistleblowers'

Protection Act, 19 Del. C. §§ 1701–08, and Delaware's labor laws, including but not limited to

19 Del. C. §§ 1103, 1109.  Against Defendants TradingScreen and TradingScreen Brokerage

Services LLC he brings individual claims of breach of contract and breach of the covenant of

good faith, and alleges violations of the Delaware Labor Law.  He individually pleads an unjust

enrichment claim against all Defendants, and a claim of tortious interference with contract

1

against Defendant Buhannic.  Plaintiff also brings three claims derivatively on behalf of

TradingScreen: breach of fiduciary duty against Defendant Buhannic, and unfair competition and

wrongful interference with prospective contractual relations against Defendants Buhannic and

SpreadZero.  All defendants move to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6).

      For the reasons stated herein, Plaintiff is granted leave to amend his Complaint with

respect to his Second and Fourth Causes of Action.  Decision with respect to all state law claims

is reserved.

## I.  Background

      The following facts are taken from Plaintiff's Verified Amended Complaint filed on

November 19, 2010.

      TradingScreen, Inc. is a financial software business that provides hedge funds, asset

managers, private bankers, and high net-worth individuals with software that helps them conduct

trades on the internet.  Compl. ¶ 23.  TradingScreen Brokerage Services, LLC ("TSBS") is a

broker-dealer affiliated with TradingScreen, Inc.  Compl. ¶ 94.  Buhannic is Chief Executive

Officer of both TradingScreen, Inc. and TSBS.  Compl. ¶¶ 1, 95.  TradingScreen extended an

offer of employment to Plaintiff on August 6, 2003, through an Offer Letter, Non-Competition

Agreement, and Nondisclosure and Development Agreement ("Nondisclosure Agreement").

Plaintiff signed these agreements on August 12, 2003.  Compl. ¶ 54.  These documents afforded

Plaintiff the right to participate in company benefit plans, including its Executive Stock Incentive

Plan.  Compl. ¶ 57.  Under the plan, Plaintiff received options to purchase 42,125 shares of

TradingScreen stock (the "Stock Options") on April 1, 2005, April 1, 2006, and March 1, 2007.

Compl. ¶¶ 25, 113.  In 2007 Plaintiff was promoted to Head of Sales for the Americas.  Compl. ¶

24.  On April 1, 2008, April 1, 2009, and March 2, 2010, Plaintiff was granted shares of restricted common stock in TradingScreen, totaling 67,280 shares (together, the "Stock Grants"). Compl. ¶ 59.  Additionally, Plaintiff purchased 100 shares of TradingScreen common stock using his own funds in March 2010.  Compl. ¶ 25.

In early 2009, Plaintiff learned that the CEO of TradingScreen, Defendant Buhannic, was diverting TradingScreen's corporate assets to another company which he solely owned, SpreadZero, which offered products and services similar to those of TradingScreen.  Compl. ¶¶ 29–30.  In particular, Plaintiff alleges that Buhannic was using TradingScreen employees to do unpaid work for SpreadZero, cannibalizing TradingScreen's customer lists, and invoicing SpreadZero at below-market rates for various services.  Compl. ¶ 30.  By late 2009, Plaintiff concluded that Buhannic's behavior was costing TradingScreen hundreds of thousands of dollars and posing a threat to the existence of TradingScreen's business.  Compl. ¶ 32.

In January 2010, Plaintiff reported Buhannic's behavior to the President of TradingScreen, Michael Chin, who passed the information to those members of TradingScreen's Board of Directors who were not controlled by Buhannic (the "Independent Directors").  Compl. ¶ 36.  The Independent Directors hired the law firm of Latham & Watkins LLP ("Latham") to conduct an internal investigation.  *Id.*  In March 2010, Latham issued a report confirming Plaintiff's allegations.  Compl. ¶ 38.  On March 12, 2010, the Independent Directors informed Buhannic that he would have to resign, but on March 15 Buhannic gained control of the Board and thereby prevented the Independent Directors from forcing his resignation.  Compl. ¶¶ 40–41. On March 19, David Roscoe and Piero Grandi, two of the Independent Directors, sent Plaintiff an email assuring him that he would not be fired without the approval of the Board of Directors. Compl. ¶ 51.  Buhannic fired Chin on June 2, 2010 and fired Plaintiff on August 2, 2010, without

3

first informing the Board.  Compl. ¶¶ 43, 46.  Buhannic told Plaintiff that he would not receive

TradingScreen's customary severance package of one month's pay for every year worked, here

totaling $110,833, or the opportunity to cash out his stock options, which Plaintiff values at

approximately $850,000.  Compl. ¶¶ 47, 79–80.

Plaintiff filed his first Complaint in this action on October 29, 2010, and filed a Verified

Amended Complaint on November 19, 2010.  He claims compensatory damages of not less than

$3 million, pre-judgment and post-judgment interest on these damages, equitable relief that will

enable Plaintiff to realize the value of his interest in TradingScreen, costs, attorney's fees, and

punitive damages.  Defendants TradingScreen, SpreadZero, and Buhannic each filed motions to

dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on

December 22, 2010.

## II.  Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual

allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Lee v. Bankers

Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).  "To survive dismissal, the plaintiff must provide

the grounds upon which his claim rests through factual allegations sufficient to raise a right to

relief above the speculative level."  *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93

(2d Cir. 2007) (internal quotation marks omitted).  Ultimately, the plaintiff must allege "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 547 (2007).  "[A] simple declaration that defendant's conduct violated the ultimate legal

standard at issue . . . does not suffice."  *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001).  "The

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations omitted).

### III. Discussion

#### A. Dodd-Frank Act Claims

In his Second Cause of Action, Plaintiff asserts that he is entitled to relief under the Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, passed in July 2010. Most of these provisions are concerned with a "bounty" program that allows whistleblowers who report violations of the securities laws to the Securities and Exchange Commission ("SEC" or "Commission") to receive portions of money recovered by the Commission. However, the statute also contains a private cause of action for whistleblowers alleging retaliatory discharge or other discrimination. *Id.* § 78u-6(h)(1)(B)(i). Relief includes reinstatement, double the back pay owed, and costs and fees. *Id.* § 78u-6(h)(1)(C). Plaintiff argues that he may bring an action against Buhannic and TradingScreen under these anti-retaliation provisions. Defendants contend that Plaintiff is not covered by these provisions because he never personally contacted the SEC to report Buhannic's conduct. Plaintiff's claim raises three questions: (1) whether any disclosure

5

to the SEC is required as a predicate to an action under the whistleblower anti-retaliation provisions of the Dodd-Frank Act; (2) if such disclosure is required, whether the party invoking the Act must have personally and directly reported to the SEC; (3) whether Plaintiff has adequately alleged that the information he provided to attorneys retained by certain Independent Directors was ultimately reported to the SEC.

### i. The Dodd-Frank Act's Requirement of Disclosure to the SEC

The Dodd-Frank Act defines a whistleblower making disclosures under the SEC's jurisdiction as follows: "The term 'whistleblower' means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6) (emphasis added).  Defendants argue that the plain text of this statutory definition requires that a whistleblower report to the SEC in order to invoke the anti-retaliation provisions of the Act.  Plaintiff replies that this interpretation would result in an unreasonable reading of the statute, and that he is covered by other provisions that do not require reporting to the SEC.[1]

In statutory construction cases, "the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (internal quotation marks and citation omitted).  Here, the anti-retaliation provisions of the Dodd-Frank Act explicitly prohibit retaliation against whistleblowers who provide information and testimony *to the SEC*.  15 U.S.C. § 78u-6(h)(1)(A)(i)–(ii).  However, they also protect whistleblowers who make disclosures falling into one of four categories: "disclosures that are required or protected under the Sarbanes-

---

[1] This is an issue of first impression in the federal courts.

Oxley Act . . . the Securities Exchange Act of 1934 . . . section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission." *Id*. § 78u-6(h)(1)(A)(iii).  This latter provision does not require that disclosure be made directly to the SEC.  Therefore, a literal reading of the definition of the term "whistleblower" in 15 U.S.C. § 78u-6(a)(6), requiring reporting to the SEC, would effectively invalidate § 78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC.  Plaintiff seizes upon this contradiction to argue that Congress cannot have intended to require whistleblowers to report to the SEC to avail themselves of the Act's anti-retaliation provisions.  He argues that if protections were limited only to those who reported information directly to the SEC, then whistleblowers who reported securities law violations to other federal agencies such as the Department of Justice or the Internal Revenue Service would remain unprotected, a result which he deems irrational.

The legislative history of the Act provides little evidence of Congress's purpose.  The various committee reports and debates in Congress focus on the bounty provisions of the Act and contain very few substantive discussions of its anti-retaliation provisions.  Of those few, none touch upon the issue of whether reporting to the SEC is required for whistleblowers to avail themselves of the Act's anti-retaliation provisions.[2]  However, other provisions of the Dodd-Frank Act show that Congress was perfectly capable of extending whistleblower protection to persons other than those reporting to a particular federal agency.  The Act enacts separate whistleblower anti-retaliation provisions under the purview of the newly-created Bureau of

---

[2] For discussions of the whistleblower provisions in the legislative history of the Dodd-Frank Act, see, e.g., H.R. Rep. No. 111-517, at 870 (2010); S. Rep. No. 111-176, at 38, 110-12, 217-18 (2010); 156 Cong. Rec. S5916 (daily ed. Jul. 15, 2010) (statement of Sen. Reed); 156 Cong. Rec. S5929 (daily ed. Jul. 15, 2010) (statement of Sen. Dodd); 156 Cong. Rec. S4075 (daily ed. May 20, 2010) (statement of Sen.  Shelby); 156 Cong. Rec. S3153 (daily ed. May 5, 2010) (statement of Sen. Menendez).  The only sustained comment on the anti-retaliation provisions focused on confidentiality.  *See, e.g.*, 156 Cong. Rec. S3975 (daily ed. May 19, 2010) (statement of Sen. Leahy).

Consumer Financial Protection, protecting persons providing disclosures "to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency" of violations of law or regulations under the Bureau's jurisdiction.  12 U.S.C. § 5567(a)(1). The absence of similarly broad protections for whistleblowers alleging securities law violations indicates that Congress intended to encourage whistleblowers reporting such violations to report to the SEC.

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted).  Here, Plaintiff's interpretation of the Act would read the phrase "to the Commission" in 15 U.S.C. § 78u-6(a)(6) out of the statute altogether.  The contradictory provisions of the Dodd-Frank Act are best harmonized by reading 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC.  Therefore, Plaintiff must either allege that his information was reported to the SEC, or that his disclosures fell under the four categories of disclosures delineated by 15 U.S.C. § 78u-6(h)(1)(A)(iii) that do not require such reporting: those under the Sarbanes-Oxley Act, the Securities Exchange Act, 18 U.S.C. § 1513(e), or other laws and regulations subject to the jurisdiction of the SEC.

From these four categories, Plaintiff first alleges that he made disclosures protected by section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("section 806").  Compl. ¶ 92. However, the whistleblower provisions of section 806 apply only to publicly traded companies with securities registered under section 12 of the Securities Exchange Act of 1934, 15 U.S.C. §

8

78l, or public companies required to file reports under section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).  18 U.S.C. § 1514A(a); *see also Brady v. Calyon Securities (USA)*, 406 F. Supp. 2d 307, 317 (S.D.N.Y. 2005) ("A specific requirement" under section 806 "is that defendant be a publicly traded company.").  TradingScreen is a privately held company.  Compl. ¶ 48 (referring to contemplated initial public offering).  Plaintiff argues that TradingScreen was nevertheless covered by the Act because it was selling securities and seeking an initial public offering or change of control.  Compl. ¶ 98.  Thus, according to Plaintiff, Buhannic's malfeasance should have been revealed to prospective investors, and failure to do so would have violated section 10(b) of the Exchange Act and SEC Rule 10b-5.  However, Plaintiff fails to allege that TradingScreen had taken any actions toward an initial public offering or change of control, or advertised any such actions to third parties.  Nor does he allege any particular statements or other evidence through which he learned that TradingScreen was supposedly contemplating such a transaction.  Plaintiff also fails to identify the securities covered by the Exchange Act which he claims TradingScreen sold.  A mere allegation of an intention to sell securities, without more, is not enough to turn a privately held company into a publicly traded one.  Plaintiff's invocation of section 806 here attempts to make out a claim of securities fraud, and he has failed to plead the facts alleging this fraud with the requisite particularity.  *See* Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Plaintiff alleges that TSBS is a broker-dealer with obligations to report to the SEC, and argues that it is therefore covered by section 806.  Compl. ¶ 94.  By extension, Plaintiff argues, TradingScreen, Inc. and Buhannic are also covered by section 806 because Buhannic is Chief Executive Officer of TSBS, Compl. ¶ 95, and TSBS is an affiliate of TradingScreen, Inc.

9

Compl. ¶ 94.  Plaintiff's argument is without merit.  Again, he does not allege that TSBS is a publicly traded company, and only publicly traded companies are subject to the whistleblower protections of section 806.  *See Brady v. Calyon Securities*, 406 F. Supp. 2d at 317 (holding that section 806 does not apply to privately held broker-dealer).  In sum, Plaintiff has not made disclosures covered by the Sarbanes-Oxley Act, and cannot claim Dodd-Frank Act protection on that basis.[3]

Plaintiff also argues that he disclosed Buhannic's violations of rules promulgated by the Financial Industry Regulatory Authority ("FINRA"), and that these disclosures fall under the Dodd-Frank Act's protection of disclosures "subject to the jurisdiction of the Commission."  15 U.S.C. § 78u-6(h)(1)(A)(iii).  In particular, Plaintiff alleges that Buhannic violated FINRA Rule 2010 by misappropriating TradingScreen's confidential client information, and violated FINRA Rule 3270 by failing to report his involvement with SpreadZero to the Board of TradingScreen.  Compl. ¶¶ 34–35; FINRA Manual Rules 2010, 3270.  Plaintiff is mistaken.  The Dodd-Frank Act does not protect whistleblowers who report violations of any laws or regulations subject to the SEC's jurisdiction.  Instead, it protects "*disclosures that are required or protected* under . . . any other law, rule, or regulation subject to the jurisdiction of the Commission."  15 U.S.C. § 78u-6(h)(1)(A)(iii) (emphasis added).  Merely alleging the violation of a law or rule under the SEC's purview is not enough; a plaintiff must allege that a law or rule in the SEC's jurisdiction explicitly requires or protects disclosure of that violation.  The Dodd-Frank Act protects whistleblowers who fulfill an existing duty to disclose, but it does not protect those who report violations of SEC laws or regulations that do not impose such a duty.  Here, the FINRA rules

---

[3] The Court need not reach Defendants' contention that a whistleblower claiming coverage under 15 U.S.C. § 78u-6(h)(1)(A)(iii) for disclosures protected by the Sarbanes-Oxley Act must comply with the latter's requirement of exhausting administrative remedies by filing  a complaint with the Secretary of Labor, 18 U.S.C. § 1514A(b)(1), before bringing an action under the Dodd-Frank Act.

cited by Plaintiff do not impose a duty to disclose.  Rule 2010 contains only a general obligation to "observe high standards of commercial honor and just and equitable principles of trade." FINRA Manual Rule 2010.  Rule 3270 only requires an employee of a FINRA member firm receiving employment or compensation from "any business activity outside the scope of the relationship with his or her member firm" to provide prior written notice to the member firm; it does not require persons other than the employee to report such outside relationships.  FINRA Manual Rule 3270.  Therefore, Plaintiff cannot argue that his reporting of FINRA rule violations entitles him to protection under 15 U.S.C. § 78u-6(h)(1)(A)(iii).

Finally, Plaintiff claims that his disclosures were protected by § 78u-6(h)(1)(A)(iii)'s incorporation of 18 U.S.C. § 1513(e), which prohibits "interference with the lawful employment or livelihood of any person" who provides truthful information "to a law enforcement officer" relating to the commission of federal offenses.  Penalties include fines and up to ten years of imprisonment.  *Id.*  Invoking this statute, Plaintiff argues in his Memorandum of Law that he reported various federal offenses—not only securities offenses, but also federal criminal statutes including wire fraud.  Pl. Mem. Opp. Mot. D. at 23.  However, section 1513(e) does not afford Plaintiff protection under the Dodd-Frank Act.  Plaintiff does not allege that he or anyone acting jointly with him reported Buhannic's conduct to a law enforcement or government authority other than the SEC.  Therefore, a claim of whistleblowing under section 1513(e) still relies on the question of whether Plaintiff or anyone acting jointly with him did in fact report to the SEC.

In sum, the anti-retaliation whistleblower protection provisions of the Dodd-Frank Act require Plaintiff to show that he either provided information to the SEC, or that his disclosures fell under the four categories listed in 15 U.S.C. § 78u-6(h)(1)(A)(iii).  Since Plaintiff fails to allege the latter, he must establish the former.

### ii.   Joint Action and SEC Disclosure Under the Dodd-Frank Act

If the whistleblower protection provisions of the Dodd-Frank Act require reporting to the SEC, Plaintiff argues that he is still protected by these provisions because he acted jointly with the attorneys from Latham to reveal Buhannic's alleged malfeasance.  He contends that by initiating the inquiry into Buhannic's conduct and disclosing information in interviews with the Latham attorneys conducting the investigation, he was acting jointly with the Latham attorneys. Compl. ¶¶ 36–37.  Moreover, he alleges that he expected Latham to report his information to the SEC, and that Latham passed his information to the SEC.  Compl. ¶¶ 90–91.  Defendants dispute Plaintiff's interpretation of the term "acting jointly" under 15 U.S.C. § 78u-6(a)(6).  They argue that the Act only extends anti-retaliation protections to those who report personally and directly to the SEC, and that Plaintiff's actions with the Latham attorneys do not constitute the joint action covered by the statute.  Plaintiff's claim poses the following question: is a prospective whistleblower covered by the Dodd-Frank Act if he gave information to attorneys who he alleges on information and belief reported it to the SEC?[4]

Defendants contend that the Latham attorneys merely interviewed Plaintiff, and that the Complaint does not state that he was a source of substantial information, that he hired the Latham attorneys, or directed their actions.  This argument would effectively rewrite the phrase "acting jointly" in the Dodd-Frank Act to require leadership, hiring, or direction of any investigation or effort to report information to the SEC.  Defendants provide no reason for such an interpretation.  The plain text of the statute merely requires that the person seeking to invoke

---

[4] Plaintiff also argues that if he intended for his information to be conveyed to the SEC and cooperated in an investigation expecting that the information would be so conveyed, he would be covered by the Act even if there was no actual reporting to the SEC.  Nothing in the statute supports this interpretation; its plain text proscribes retaliation "for any lawful act," not mere intention, "in providing information to the Commission" or "in initiating, testifying in, or assisting" in an investigation or action by the Commission.  15 U.S.C. § 78u-6(h)(1)(A)(i)-(ii).

12

the private right of action have acted with others in such reporting, not that he or she led the effort to do so.

Furthermore, Defendants' claim that the Latham attorneys merely interviewed Plaintiff is belied by the allegations in the Complaint, which state that Plaintiff's disclosures to Michael Chin, President of TradingScreen, and Chin's reporting of these disclosures to the independent members of the Board caused the latter to hire Latham.  Compl. ¶ 36.  Latham's investigations confirmed Plaintiff's allegations, and unearthed additional evidence of malfeasance.  Compl. ¶ 38.  In other words, Latham was retained on Plaintiff's initiative, and his disclosures provided the basis for its investigation.  Under these specific allegations, Plaintiff has adequately pleaded his contention that he acted jointly with Latham, Chin, and the Independent Directors in investigating Buhannic's conduct.[5]

Defendants argue that the SEC, in implementing the Dodd-Frank Act, has already defined a whistleblower as one who personally provides information directly to the commission.  The SEC issued a Proposed Rule for the bounty provisions of the Act in November 2010.  *Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934*, 75 Fed. Reg. 70488 (Nov. 17, 2010) (to be codified at 17 C.F.R. pts. 240, 244).  The Proposed Rule states, "You are a whistleblower if, alone or jointly with others, you provide the Commission with information relating to a potential violation of the securities laws."  75 Fed. Reg. at 70519 (to be codified at 17 C.F.R. 240.21F-2(a)).  Recognizing that this Proposed Rule

---

[5] The parties also dispute the meaning of the term "provide" in the Dodd-Frank Act's whistleblower provision.  Plaintiff distinguishes between providing information to the SEC, which he defines as making it available, and conveying it directly to the agency.  In support, he cites cases—none of which apply the Dodd-Frank Act—to argue that the term "provide" does not mean direct, physical transfer of the information.  Defendants dismiss these cases as irrelevant, but provide no alternative authority for construing the statute according to their theory of requiring direct reporting to the SEC.  None of these statutory construction arguments are dispositive, and the Court does not rely upon them.

was issued after Plaintiff was fired, and that it has not yet been enacted by the SEC, Defendants

cite it to show the agency's interpretation of the statute, which they claim should be afforded

great weight.

Of course, "considerable weight should be accorded to an executive department's

construction of a statutory scheme it is entrusted to administer." *Chevron v. Natural Res. Def.*

*Council*, 467 U.S. 837, 844 (1984).  However, the agency here has not spoken on the precise

question involved in this case.  The SEC's definition of the term "whistleblower" does not clarify

the question of whether direct personal reporting is required, for the Proposed Rule and its

discussion merely restate the statutory definition.[6]  Other portions of the Proposed Rule assume

that a whistleblower has reported directly to the SEC, but these are not relevant here because

they interpret the bounty award provisions of the Act, not the separate anti-retaliation provisions

at issue in this case.  Obviously, a whistleblower must directly report to the SEC to receive a

bounty award from the SEC, but the agency has not extended this prerequisite to the private right

of action in the anti-retaliation provisions.  On the contrary, the SEC explicitly excludes the anti-

retaliation provisions from the Proposed Rule and seeks comment "on whether it should

promulgate rules regarding the interpretation or implementation of the anti-retaliation provisions

of Section 21(h) of the Exchange Act."  75 Fed. Reg. at 70511.  Should there be any doubt that

the SEC distinguishes between the bounty and anti-retaliation provisions, the Proposed Rule

states that these provisions have different standards of implementation: "The retaliation

protections afforded to whistleblowers by the provisions of paragraph (h)(1) of Section 21F of

---

[6] Defendants cite the sole discussion of the anti-retaliation provisions contained in the SEC's Proposed Rule, which states that "for purposes of the antiretaliation provision of . . . 15 U.S.C. 78u–6(h)(1)(A)(i), the requirement that a whistleblower provide 'information to the Commission in accordance' with Section 21F (15 U.S.C. 78u–6) is satisfied if an individual provides information to the Commission that relates to a potential violation of the securities laws."  75 Fed. Reg. at 70519.  Again, this passage merely restates the statutory definition, and does not specify whether direct personal reporting is required.

14

the Exchange Act (15 U.S.C. 78u–6(h)(1)) apply irrespective of whether a whistleblower satisfies the procedures and conditions to qualify for an award."  75 Fed. Reg. at 70519 (to be codified at 17 C.F.R. 240.21F-2(b)).  In sum, the SEC has not decided whether it will issue regulations implementing those provisions of the Dodd-Frank Act at issue here.  Therefore, it has proposed no interpretation of the statute requiring deference from this Court in this case.

The Court finds that Plaintiff has adequately alleged that he acted jointly with the Latham attorneys, in an effort to provide information to the SEC regarding Buhannic's alleged misconduct.  This finding does not assume that Plaintiff has adequately pleaded the allegation that Latham provided and the SEC actually received this information.

### iii.   Actual Disclosure of Buhannic's Alleged Conduct to the SEC

Plaintiff alleges "on information and belief" that the Latham attorneys passed his information to the SEC.  Compl. ¶ 91.  "Conclusory pleadings on information and belief are inadequate as a matter of law" to survive a motion to dismiss.  *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004) (internal quotation marks omitted).  However, "allegations pled on information and belief are proper if accompanied by a statement of the facts upon which the belief is founded."  *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (internal quotation marks omitted).

At oral argument, Plaintiff conceded that he could not offer direct knowledge or evidence that his information was reported to the SEC, but claimed that he had information from a confidential source that this took place.  Tr. Oral Argument 37:21–22, 38:6–13, Mar. 15, 2011.  Plaintiff maintained that he could not reveal this source for fear of retaliation.  Tr. 38:17–20.  Plaintiff further asserted that two Independent Directors of TradingScreen, members of a venture capital company named Technology Crossover Ventures, were in the process of selling their

15

interest in TradingScreen to outside investors, and knew that if they did so without revealing information concerning Buhannic's alleged misconduct to the SEC, they themselves could be liable for securities fraud.  These Independent Directors, Plaintiff claimed, were also trying to unseat Buhannic after he achieved control of the Board on March 15, 2010.  Tr. 43:5–22. Plaintiff argued that under these circumstances, it was almost certain that these board members directed the Latham attorneys to report Buhannic's conduct to the SEC, and that he would obtain direct evidence of such reporting during discovery.

These claims support Plaintiff's allegation on information and belief that the Latham attorneys reported Buhannic's conduct to the SEC.  However, Plaintiff only alleged these facts at oral argument and in his memorandum of law opposing Defendants' motions to dismiss, and such allegations are "treated as matters outside the pleading for purposes of Rule 12(b)."  *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).  The Complaint itself does not adequately plead that Plaintiff's information was reported to the SEC.[7]

"A district court may properly deny leave" to amend a complaint "when amendment would be futile."  *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999).  "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005).  Thus, in determining the futility of an amendment, the Court uses "the same standard as those concerning the adequacy of a filed pleading."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Here, Plaintiff has raised factual allegations that support his original pleading "on information and belief" that his information concerning Buhannic's conduct was reported to the

---

[7] The Court has given no consideration to post-argument submissions by the parties.

SEC.[8]  Compl. ¶ 91.  Accordingly, Plaintiff is granted leave to amend the Second Cause of

Action in the Complaint to plead facts supporting his knowledge, heretofore on information and

belief, that Buhannic's conduct was reported to the SEC.  Such amendment will be effective only

if it supports knowledge of actual transmission to the SEC.

### B.  Securities Exchange Act Claims

Plaintiff's Fourth Cause of Action alleges claims under Section 10(b) of the Securities

Exchange Act and the rule implementing the statute, SEC Rule 10b-5.  Section 10(b) makes it

unlawful to "use or employ, in connection with the purchase or sale of any security . . . any

manipulative or deceptive device or contrivance in contravention of such rules and regulations as

the Commission may prescribe[.]" 15 U.S.C. § 78j(b).   Rule 10b-5 prohibits "mak[ing] any

untrue statement of a material fact or [omitting] to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made, not

misleading."  17 C.F.R. § 240.10b-5(b).  In order to state a securities fraud claim under Section

10(b), a "plaintiff must establish that the defendant, in connection with the purchase or sale of

securities, made a materially false statement or omitted a material fact, with scienter, and that the

plaintiff's reliance on the defendant's action caused injury to the plaintiff." *ECA, Local 134*

*IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir.

2009) (internal quotation marks and citation omitted).

Section 10(b) claims must meet the heightened pleading requirements of Federal Rule of

Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§

---

[8] It is entirely possible, and consistent with the allegations in the Complaint, that at the time Plaintiff spoke to Latham, the Independent Directors who retained the firm fully intended to instruct the firm to convey its data to the SEC, but later changed their view, switched their allegiances, and made a deal with Buhannic.  They might thereafter have called off Latham's activities before there was any communication to the SEC.

17

77z-1, 78u-4.  *See ATSI Commc'ns*, 493 F.3d at 99.  Under the PSLRA, the complaint must

"specify each statement alleged to have been misleading [and] the reason or reasons why the

statement is misleading," and "state with particularity facts giving rise to a strong inference that

the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)–(2).  "Therefore,

[w]hile we normally draw reasonable inferences in the non-movant's favor on a motion to

dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because

the PSLRA requires particular allegations giving rise to a strong inference of scienter."  *ECA*,

553 F.3d at 196 (internal quotation marks and citation omitted).

 Plaintiff brings securities fraud claims based on three separate transactions: (1) the Stock

Options to purchase 42,125 shares of TradingScreen stock granted under the Employee Stock

Incentive Plan, (2) the Stock Grants totaling 67,280 shares of common stock granted between

April 2008 and March 2010, and (3) Plaintiff's purchase of an additional 100 shares of

TradingScreen common stock in March 2010.  Plaintiff offers three separate theories of

securities fraud to support his claims.

 First, Plaintiff claims that the Stock Options and Grants were securities covered by

Section 10(b) and Rule 10b-5 because TradingScreen offered them as inducement for his

employment.  Compl. ¶ 115.  He cites *Dubin v. E.F. Hutton*, 695 F. Supp. 139 (S.D.N.Y. 1988),

where the court found that the plaintiff "did exchange something of tangible value—he changed

his way of life and his job—in return for the stock and stock options" granted to him as part of

his offer of employment.  *Id.* at 145.  Therefore, the stock options in *Dubin* met the requirements

of *Int'l Bhd. of Teamsters v. Daniel*, which held that "the Securities Acts do not apply to a

noncontributory, compulsory pension plan."  439 U.S. 551, 570 (1979).  In *Dubin*, the

defendant's misrepresentations about the stock options offered to plaintiff "substantially affected

plaintiff's decision whether to accept [the defendant's] employment offer—that is, whether to 'purchase' the 'security.'" 695 F. Supp. at 147.  Having invoked *Dubin* to argue that his Stock Options and Grants were securities, Plaintiff cites *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 98 (2d Cir. 2001), for the proposition that concealment of a principal's lack of skills and expertise constitutes a misrepresentation that directly affects the valuation of a security interest in a company.  Here, TradingScreen and Buhannic allegedly concealed information necessary for Plaintiff to value accurately the fair market price of his Stock Options and Grants.  Compl. ¶ 141.  That information consisted of Buhannic's malfeasance and TradingScreen's efforts to conceal it, information that Plaintiff alleges would have depressed the securities' value by indicating that Plaintiff was not a skilled and competent manager.  Pl. Mem. Opp. Mot. D. 17.

       This theory of securities fraud is without merit.  To invoke *Dubin* successfully, Plaintiff must argue that his acceptance of the Stock Options and Grants when he was offered employment in 2003 constituted the purchase of a security.  He cannot argue that the awards of Stock Options on April 1, 2005, April 1, 2006, and March 1, 2007, Compl. ¶ 113, or the awards of Stock Grants on April 1, 2008, April 1, 2009, and March 2, 2010, Compl. ¶ 59, constituted purchases of securities because these took place during his employment, and were inducements for him to continue employment, not to accept it in the first place.  While *Dubin* held that a plaintiff's acceptance of employment could constitute the purchase of a security, a plaintiff's mere "continued employment is not a cognizable contribution" under *Daniel.  Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2009 WL 1585769, at *6 (S.D.N.Y. 2009).  Therefore, Plaintiff can only argue that his acceptance of employment and possible Stock Options and Grants in 2003 constituted the purchase of securities.  However, Plaintiff has not alleged facts showing that

Buhannic's misconduct occurred, much less that it was concealed, in 2003.  To the contrary, he alleges that Buhannic "was engaged in fraud and misappropriation of TradingScreen's assets . . . in early 2008."  Compl. ¶ 120.  Plaintiff cannot assert loss causation where the misrepresentations or omissions he pleads took place after he allegedly purchased the securities at issue.  *See, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("A statement cannot be fraudulent if it did not affect an investment decision of the plaintiff.").

Plaintiff's second theory of securities fraud asserts that TradingScreen misrepresented its payout policy for the Stock Options and Grants.  He maintains that under his employment agreement, a change of control would have vested his Stock Grants allowing him to cash out of the company.  Compl. ¶ 82.  Plaintiff claims that in August 2010 Buhannic was negotiating a change of control, and that Buhannic fired him before that change of control so that he would not be able to cash out his stock options and grants.  Compl. ¶ 83.   These allegations closely mirror the claims in *Dubin*, but they are pleaded inadequately.  In *Dubin*, a change of control actually took place, and the employer refused to respond to the plaintiff's repeated inquiries about cashing out his stake in the company.  Here, Plaintiff only makes a conclusory allegation that Buhannic was planning a change of control, pleads no facts that support such a conclusion, and does not allege that a change of control ever took place.  He also fails to identify the employment agreement that contained these vesting provisions, or indicate when he signed it.  None of the documents offered by the parties concerning TradingScreen's offer of employment to Plaintiff contain any reference to conditions for vesting stock options and grants.  Such fact-deficient pleading does not meet the heightened standards of the PSLRA and Rule 9(b).

Plaintiff also alleges that he was promised that in the event of his involuntary termination, he could exercise his Stock Options at the average strike price, or receive a cash

20

payment of the difference between that price and the market price of TradingScreen's common stock. Compl. ¶ 138. Buhannic and TradingScreen, he claims, refused to allow him to cash out the Stock Options. Compl. ¶¶ 78, 140. Again, Plaintiff has failed to allege these facts with the requisite particularity. A complaint making securities fraud allegations "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks and citation omitted). Here, Plaintiff claims that he "had a contract with TradingScreen" that contained the terms by which the Stock Options would vest, but he does not name this contract, reveal whether it was written or oral, identify its contents and purpose, or disclose when it was signed. Compl. ¶ 138. Therefore, he has failed to plead adequate facts supporting his second theory of securities fraud.

Plaintiff's third theory of securities fraud involves the 100 shares he purchased in March 2010. He claims that in purchasing these shares, he relied on TradingScreen's representations that Buhannic would be forced to step down, Compl. ¶ 40, and the March 19, 2010 email from Roscoe and Grandi assuring Plaintiff that he could not be fired without the Board's approval. Compl. ¶ 105. As a result, Plaintiff claims that when he exercised his options to buy the 100 shares, he paid an inflated stock price because he incorrectly assumed that TradingScreen was going to be run by a competent manager. Again, Plaintiff relies on the *Suez* case to argue that the misrepresentations leading him to this belief are actionable under federal securities laws.

Plaintiff's third theory fails for two reasons. First, he fails to plead adequately loss causation. To establish loss causation in securities fraud, plaintiffs must show "a causal connection between the material misrepresentation and the loss[.]" *Dura Pharms., Inc. v.*

21

*Broudo*, 544 U.S. 336, 342 (2005).  The Second Circuit has held that "a misstatement or omission is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentation," and that the loss causation inquiry requires "both that the loss be foreseeable *and* that the loss be caused by the materialization of the concealed risk."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis in original).  Here, Plaintiff has not alleged facts showing or quantifying any loss to the value of the 100 shares, much less that this loss was caused by the alleged misrepresentations of TradingScreen or Buhannic.  Plaintiff has not alleged that he sold the shares at a loss, or provided any figures for the price of TradingScreen's common stock.  He only supplies a conclusory allegation that Buhannic's activities have caused the stock value to diminish.  Compl. ¶ 119.

Second, Plaintiff fails to plead with sufficient particularity TradingScreen's alleged misrepresentation that Buhannic would be asked to step down as CEO.   Plaintiff asserts that two board members told Buhannic that he would have to step down, but fails to mention whether Plaintiff was informed of this confrontation, who told Plaintiff, where and when he was told, and what precisely was said to Plaintiff.  Compl. ¶ 40.  The Complaint never claims that TradingScreen or any of its representatives told Plaintiff that Buhannic was asked to resign.[9] Plaintiff has failed to adequately allege the misrepresentation that Buhannic was asked to step down, and therefore cannot claim that this misrepresentation led him to believe that TradingScreen would be competently managed.

---

[9] In his Memorandum of Law in opposition to Defendants' motion to dismiss, Plaintiff claims that "Egan was told that Buhannic's malfeasance and misappropriation would be stopped by the board," Pl. Mem. Opp. Mot. D. at 16, but the cited portion of the Complaint does not mention Plaintiff, much less allege that he was told of the board's intended actions.  Compl. ¶ 40.

In sum, Plaintiff's allegations of securities fraud do not satisfy the heightened pleading standards of the PSLRA or Fed. R. Civ. P. Rule 9(b).  Amendment would not be futile with respect to this claim, for Plaintiff possesses knowledge concerning the vesting provisions of his Stock Options and Grants, the contract with TradingScreen that contained these provisions, the loss in value of his 100 shares, and the circumstances surrounding the alleged misrepresentation that Buhannic would be asked to resign.  Accordingly, Plaintiff is granted leave to amend the Complaint with respect to his Fourth Cause of Action.

### C.  State Law Claims

Plaintiff brings nine claims under Delaware and New York law, claiming supplemental or pendent jurisdiction pursuant to 28 U.S.C. § 1367(a).  "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because the ultimate disposition of Plaintiff's federal claims is pending leave to amend the Complaint, this Court reserves decision on Plaintiff's state claims.

## IV. Conclusion

For the reasons stated above, Plaintiff is granted leave to amend his Second and Fourth Causes of Action; an amended complaint is due within two weeks of this date. Decision with respect to all state law claims is reserved.

SO ORDERED.

Dated: May 4, 2011
       New York, NY

_____
                              U.S.D.J.