UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK EGAN, individually and on behalf of
TRADINGSCREEN, INC.,

                Plaintiff,

v.

TRADINGSCREEN, INC., TRADINGSCREEN
BROKERAGE SERVICES, LLC, PHILIPPE
BUHANNIC, SPREADZERO HOLDINGS INC.,
and SPREADZERO LLC,

                Defendants.

10 Civ. 8202 (LBS)

**MEMORANDUM
& ORDER**

---

SAND, J.

      Plaintiff Patrick Egan brings this action against Defendants TradingScreen, Inc. and TradingScreen Brokerage Services, LLC (collectively "TradingScreen"), SpreadZero Holdings Inc. and SpreadZero LLC (collectively "SpreadZero"), and Philippe Buhannic. Plaintiff brings claims under the Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u–6, the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and various statutes and causes of action under New York and Delaware law. In a decision dated May 4, 2011, this Court held that Plaintiff had not alleged claims under the Dodd-Frank Act or the Securities Exchange Act sufficient to survive Defendants' motions to dismiss for failure to state a claim. The Court afforded Plaintiff the opportunity to replead his claims, and Plaintiff filed an amended complaint on May 18, 2011. Defendants have renewed their motions to dismiss.

      For the following reasons, Defendants' motions are granted.

1

## I. Background

The factual background of this case is fully set forth in this Court's Opinion and Order dated May 4, 2011. *Egan v. Tradingscreen et al.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066 (S.D.N.Y. May 4, 2011) ("*Egan I*"). A brief summary follows.

Defendant TradingScreen, Inc. is a financial software business, and Defendant TradingScreen Brokerage Services, LLC ("TSBS") is a broker-dealer affiliated with it. Defendant Buhannic is Chief Executive Officer of both TradingScreen, Inc. and TSBS. Plaintiff was hired by TradingScreen in August 2003. In early 2009, Plaintiff learned that Defendant Buhannic was diverting TradingScreen's corporate assets to another company which he solely owned, Defendant SpreadZero. By late 2009, Plaintiff concluded that Buhannic's activities were costing TradingScreen hundreds of thousands of dollars and posing a threat to its business. In January 2010, Plaintiff reported Buhannic's activities to the President of TradingScreen, Michael Chin, who passed the information to members of TradingScreen's Board of Directors not controlled by Buhannic (the "Independent Directors"). The Independent Directors hired Latham & Watkins LLP ("Latham") to conduct an internal investigation. In March 2010, Latham issued a report confirming Plaintiff's allegations. On March 15, Buhannic gained control of the Board and prevented the Independent Directors from forcing his resignation. Buhannic fired Plaintiff on August 2, 2010, and told Plaintiff that he would not receive TradingScreen's customary severance package of one month's pay for every year worked or the opportunity to cash out his stock options.

Plaintiff filed his original Complaint in this action on October 29, 2010, and filed a First Amended Complaint ("FAC") on November 19, 2010. Defendants

TradingScreen, SpreadZero, and Buhannic each filed motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 22, 2010. This Court issued an Opinion and Order granting Plaintiff leave to amend his Complaint on May 4, 2011.  Plaintiff filed a Second Amended Complaint ("SAC") on May 18, 2011.  Defendants filed their renewed motions to dismiss on June 14, 2011.

Plaintiff alleges that he is entitled to relief under the Securities Whistleblower Incentives and Protection provisions of the Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6.  Specifically, he invokes the statute's private cause of action for whistleblowers alleging retaliatory discharge or other discrimination.  *Id.* § 78u–6(h)(1)(B)(i).  Plaintiff also contends that Defendants TradingScreen, TSBS, and Buhannic violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), because they allegedly made various misrepresentations to him concerning his purchases and options of TradingScreen stock and the terms and conditions of his employment.  Plaintiff also pleads a number of New York and Delaware statutory and common law claims against various Defendants, some individually and some derivatively on behalf of TradingScreen.

**II. Legal Standard**

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (internal quotation marks omitted).

Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

### III. Discussion

#### A. Dodd-Frank Act Claims

In *Egan I*, this Court found that Plaintiff's alleged cooperation with the Latham attorneys could have met the Dodd-Frank Act's definition of "acting jointly" to provide information to the United States Securities and Exchange Commission ("SEC"), 15 U.S.C. § 78u-6(a)(6), but that Plaintiff had failed to plead facts showing that transmission of this information to the SEC actually took place.[1] Plaintiff was granted "leave to amend the Second Cause of Action in the Complaint to plead facts supporting his knowledge, heretofore on information and belief, that Buhannic's conduct was reported

---

[1] Defendants cite two developments since this Court issued *Egan I* that allegedly clarify the phrase "acting jointly" in the securities whistleblower provisions of the Dodd-Frank Act. 15 U.S.C. § 78u-6(a)(6). First, the SEC adopted final rules for implementing certain whistleblower provisions of the Act. *Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34,300 (June 13, 2011) (to be codified at 17 C.F.R. §§ 240.21F-1 to 240.21F-17). These rules require that reports submitted by a whistleblower "be accompanied by sworn certifications by the whistleblower and counsel." *Id.* at 34339. Defendants argue that Plaintiff could not have acted jointly with the Latham attorneys because he did not follow these procedures. Defendants are mistaken, for these requirements apply only to disclosures filed anonymously with the SEC. *See id.* ("[T]he requirement of a certification by the whistleblower *or, in case of anonymous submission, the whistleblower's counsel*, is sufficient to deter false or meritless submissions.") (emphasis added). As before, "the agency here has not spoken on the precise question involved in this case." *Egan I*, 2011 WL 1672066, at *8. Second, the United States Court of Appeals for the Ninth Circuit ruled that individuals who reported information to the media with the expectation that it would ultimately be reported to some federal authority were not whistleblowers. *Tides v. Boeing Co.*, 644 F.3d 809, 815 (9th Cir. 2011). However, this case involved disclosures to the media; no such disclosures took place in the instant case.

4

to the SEC." 2011 WL 1672066 at *10. Plaintiff now contends that he has pleaded facts creating a strong inference that Buhannic's conduct was actually reported to the SEC.[2]

On April 29, 2011, Defendant TradingScreen submitted to this Court a letter from David Brodsky, a partner at Latham, stating that the firm did not report to the SEC any information concerning its internal investigation of TradingScreen in 2010. This post-argument submission was not brought properly before the Court in *Egan I*. 2011 WL 1672066, at *9 n.7. Plaintiff now explicitly cites this correspondence in the SAC, conceding that Latham did not report Plaintiff's allegations to the SEC. SAC ¶ 98. Instead, Plaintiff now alleges that the Latham letter did not indicate whether anyone acting jointly with Plaintiff reported Defendant Buhannic's conduct to the SEC, or whether anyone including Latham reported Buhannic's conduct to another law enforcement authority. SAC ¶ 100. Out of these questions, and his additional allegations, Plaintiff offers an alternative theory that some party reported his disclosures to the SEC.

Plaintiff now alleges that Technology Crossover Ventures ("TCV"), a private equity firm with a 35% stake in TradingScreen, was trying to sell its interest to an outside investor around the time of his dismissal. SAC ¶¶ 43, 97. Two of TradingScreen's board members were selected by TCV. *Id.* ¶ 97(v). These board members were aware of

---

[2] In an affidavit, Plaintiff also claims that he directed a relative to report Defendant Buhannic's conduct to the Internal Revenue Service, and that this disclosure was protected activity under 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s incorporation of 18 U.S.C. § 1513(e) into the Dodd-Frank Act. Egan Aff. ¶¶ 9–16; Pl. Mem. Opp. Mot. D. at 13–14. However, these allegations do not appear in the SAC. Affidavits making claims outside the complaint are not cognizable on a Rule 12(b)(6) motion. *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 94 (2d Cir. 2006). Plaintiff argues that the affidavit is nevertheless admissible because Defendant SpreadZero moves to dismiss under Fed. R. Civ. P. 12(b)(1), and on such motions, a court may consider evidence outside the pleadings. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140-41 (2d Cir. 2001). However, Defendant SpreadZero moved under Rule 12(b)(1) because Plaintiff only alleged state claims and not federal claims against it, whereas Plaintiff raised federal claims against the other Defendants who moved under Rule 12(b)(6). The mere presence of state claims alongside federal claims does not transform a Rule 12(b)(6) motion into a Rule 12(b)(1) motion. Therefore, this Court will not consider the allegations in Plaintiff's affidavit.

Plaintiff's allegations against Defendant Buhannic, *id.* ¶ 39, and allegedly confronted him with the results of the Latham report on March 12, 2010. *Id.* ¶ 44. The TCV board members allegedly had a strong incentive to disclose Buhannic's activities, since if they sold TradingScreen securities while concealing his activities, they would be liable for securities fraud. *Id.* ¶ 97(vi). At the same time, disclosure of Buhannic's activities would make it difficult to monetize their investment; therefore, the TCV directors did not want outsiders to know about these matters. *Id.* ¶ 5, 44. Accordingly, instead of firing Buhannic, they attempted to reach an "amicable resolution" with him, asking him to return to the board on March 15 so that they offer him the opportunity to remain at TradingScreen while resigning as CEO and from the Board. *Id.* ¶ 5, 44, 79. Even after Buhannic seized control of the Board on March 15, the TCV-controlled directors still sought to unseat him. *Id.* ¶ 97(vii). These allegations, Plaintiff contends, create a "powerful inference" that Buhannic's conduct was reported to the SEC, presumably at the direction of the TCV board members. Pl. Mem. Opp. Mot. D. at 15.

      Plaintiff is mistaken. In granting him leave to amend the FAC, this Court advised him that "[s]uch amendment will be effective only if it supports knowledge of actual transmission to the SEC." 2011 WL 1672066, at *10. He proposes that the TCV-controlled directors had an incentive to report Defendant Buhannic's conduct to the SEC,[3] but he has still failed to allege that an individual or entity actually reported

---

[3] The Court notes that Plaintiff's own allegations are contradictory and do not support the inference that the TCV-controlled directors had an incentive to report Buhannic's conduct to the SEC. Plaintiff alleges that the directors associated with TCV wanted to remove Defendant Buhannic before TCV's interest in TradingScreen was sold, and without outside publicity. *See* SAC ¶ 5, 44. On the other hand, he claims that TCV sought "new leverage to force the CEO out by reporting that CEO's misconduct to the SEC." Pl. Mem. Opp. Mot. D. at 16. The exercise of that leverage—the actual disclosure of Buhannic's activities to the SEC—would have attracted the kind of unwelcome outside publicity that would have jeopardized the sale of TCV's interest. Indeed, Plaintiff alleges that when Buhannic's activities were in fact disclosed to TradingScreen's potential buyers, they withdrew. SAC ¶ 137. In sum, Plaintiff's allegations establish that

6

Buhannic's conduct to the SEC. To address this difficulty, Plaintiff surmises "on information and belief" that some unnamed individual or individuals acting jointly with Plaintiff reported to the SEC "or other law enforcement officials." SAC ¶ 95. Far from remedying the inadequacies of the FAC, this pleading recapitulates them, by alleging transmission to the SEC "on information and belief" without facts that establish a basis for this belief.

Plaintiff himself states in the SAC that he cannot allege facts showing actual transmission of his disclosures to any law enforcement official, and does not himself know whether any such transmission took place. In responding to Latham's April 29, 2011 letter stating that it did not report Plaintiff's disclosures to the SEC, Plaintiff requested the opportunity to ask Latham if it reported its findings to anyone else, if any other parties reported the firm's findings to the SEC, whether Latham reported Buhannic's conduct to any other law enforcement official, and the basis for Latham's knowledge of what its attorneys did in connection with Plaintiff's claims. SAC ¶ 100. These questions indicate that Plaintiff does not know if his disclosures were transmitted to the SEC, and if so, who transmitted them.

Plaintiff fails to allege facts showing whether the unidentified person or persons who allegedly reported his disclosures were acting jointly with the TCV directors, Plaintiff, or some other parties. Instead, he contends that "whoever did do the reporting would have been situated identically to Latham for the purposes of Dodd-Frank's whistleblower protections." Pl. Mem. Opp. Mot. D. at 16. This claim is insufficiently pleaded. In *Egan I*, this Court found that Plaintiff had "adequately pleaded" his claim

---

the TCV directors had an incentive to threaten Buhannic with disclosure to the SEC, but also had a disincentive to carry out the threat.

that he was "acting jointly" with Latham because he had made "specific allegations" stating that "Latham was retained on Plaintiff's initiative, and his disclosures provided the basis for its investigation." 2011 WL 1672066, at *8. The SAC abandons these allegations and substitutes a vague and inadequately pleaded theory that Plaintiff was "acting jointly" with some party, 15 U.S.C. § 78u-6(a)(6), but without identifying that party and offering only speculation as to his or her motives. As a result, the Second Amended Complaint fails to state the facts necessary to adequately allege that the unnamed individual or individuals mentioned in the SAC were "acting jointly" with Plaintiff under the Dodd-Frank Act. *Id*.

In sum, Plaintiff's Second Amended Complaint fails to adequately allege a claim under the Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Act. Accordingly, Plaintiff's Second Cause of Action is dismissed.

### B.  Securities Exchange Act Claims

In *Egan I*, this Court found that Plaintiff's allegations of securities fraud under his Fourth Cause of Action did not satisfy the heightened pleading standards of the Private Securities Litigation Reform Act, 15 U.S.C. §§ 77z-1, 78u-4, and Fed. R. Civ. P. Rule 9(b). 2011 WL 1672066 at *10-13. The Court granted Plaintiff leave to amend his securities fraud claims to show "knowledge concerning the vesting provisions of his Stock Options and Grants, the contract with TradingScreen that contained these provisions, the loss in value of his 100 shares, and the circumstances surrounding the alleged misrepresentation that Buhannic would be asked to resign." *Id.*

Plaintiff alleges claims under Section 10(b) of the Securities Exchange Act and the rule implementing the statute, SEC Rule 10b–5. In order to state a securities fraud

claim under Section 10(b), a "plaintiff must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (internal quotation marks and citation omitted).

In the SAC, Plaintiff brings securities fraud claims based on four transactions: (1) Plaintiff's purchase of 100 shares of TradingScreen common stock on March 25, 2010; (2) Plaintiff's acquisitions of common stock on April 1, 2008 and March 2, 2010, totaling 7,280 shares; (3) Plaintiff's acquisition of options to purchase 42,125 shares of common stock on April 1, 2005, April 1, 2006, and March 1, 2007; and (4) Plaintiff's acquisition of 60,000 shares of restricted common stock after September or October 2006.

### i.    100 Shares Purchased on March 25, 2010

Plaintiff claims that in purchasing 100 shares of TradingScreen stock on March 25, 2010, he relied on two misrepresentations. First, he alleges that on March 9, 2010, two TradingScreen directors, David Roscoe and Robert Trudeau, told Plaintiff that they would fire Defendant Buhannic. SAC ¶ 132. Second, Roscoe and Piero Grandi, another member of TradingScreen's board, sent Plaintiff an email at 4:40 p.m. on March 19 stating that Plaintiff and other key executives would not be fired without prior approval of the Board. *Id.* ¶ 55. According to Plaintiff, both statements were misrepresentations when they were made; TradingScreen's board had determined by March 15 that it would neither fire Defendant Buhannic nor interfere with his power to fire employees. *Id.* ¶¶ 45–46, 137. Plaintiff pleads loss causation with respect to these shares and

9

misrepresentations by claiming that TradingScreen was in negotiations with potential buyers, and that those buyers walked away when it was revealed that Buhannic would remain as CEO. *Id.* ¶ 137. As a result, Plaintiff claims, the value of TradingScreen's shares dropped by at least 15%. *Id.*

Plaintiff's amended allegations remain insufficient to survive Defendants' motion to dismiss because he has not adequately pleaded scienter. "In order to plead scienter adequately under the PSLRA, a plaintiff must plead 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *ECA*, 553 F.3d at 198 (quoting 15 U.S.C. § 78u-4(b)(2)). "To qualify as 'strong'" under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u-4(b)(2)). "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations omitted).

Here, Plaintiff's factual allegations cannot support the various alternative and contradictory inferences of scienter that he offers. First, with respect to the March 9, 2010 discussion, he alleges that Roscoe and Trudeau told him that they would fire Defendant Buhannic, SAC ¶ 132, but that the Board actually did not intend to fire him because that would jeopardize the sale of TradingScreen. *Id.* ¶ 135. However, Plaintiff also alleges that to resolve the dispute amicably and protect the impending sale, the

Board had resolved to ask Buhannic to resign as a Board member and CEO, *id.* ¶¶ 44, 78, and that Board members continued their efforts to unseat him even after he gained control of the Board on March 15, 2010. *Id.* ¶ 45, 97(vii). Reading these allegations in the light most generous to Plaintiff, they only permit the inference that on March 9, Roscoe and Trudeau misleadingly stated to Plaintiff that they would force Buhannic to leave TradingScreen altogether, when in fact the Board intended to remove him as CEO and Board member while retaining him as a TradingScreen employee. This misstatement, if it occurred, does not give rise to an inference of scienter, because Buhannic's removal as CEO and Board member would have deprived him of the ability to fire Plaintiff even if Buhannic were permitted to remain at TradingScreen. Plaintiff's own allegations establish that the Board intended to deprive Buhannic of the power to fire Plaintiff. Therefore, Roscoe and Trudeau's statement on March 9, 2010 was not made with the intent to defraud Plaintiff.

Moreover, Plaintiff offers contradictory allegations and inferences regarding the motives of the TCV-controlled directors. He proposes that TCV reported Buhannic's conduct to the SEC because such a report "would have . . . increased the chance that Mr. Buhannic could be terminated for cause." *Id.* ¶ 97(viii); Pl. Opp. Mem. at 16. But he also offers the conflicting inference that "the two TCV directors had . . . decided to offer Mr. Buhannic the opportunity to remain at TradingScreen" to facilitate TCV's efforts to monetize its investment. Pl. Opp. Mem. at 3; SAC ¶¶ 135–36. In light of these inconsistent allegations and theories, the only plausible inference is that the Board sought to remove Buhannic as CEO and Board member, and thus did not make any fraudulent statements to Plaintiff on March 9, 2010.

With respect to the March 19, 2010 email, Plaintiff also offers inadequate allegations and inferences.  He claims that Roscoe and Grandi's promise that he would not be fired absent Board approval was false because they "[e]ither . . . did not confirm this promise with Mr. Buhannic . . . or Mr. Buhannic lied about his intentions."  SAC ¶ 112.  Neither of these allegations is consistent with an inference of scienter.  If Buhannic lied to Roscoe and Grandi, then the latter did not intentionally deceive Plaintiff; if Roscoe and Grandi neglected to confirm their promise with Buhannic, this act does not show a motive to deceive Plaintiff.  To furnish an inference of scienter, Plaintiff proposes that TradingScreen made the March 9 and 19 statements to Plaintiff so that the company's top employees would remain to train their replacements, even though the board would not protect them from Defendant Buhannic.  SAC ¶ 113; Pl. Opp. Mem. at 7.  However, this inference is inconsistent with Plaintiff's other allegations.  He does not claim that he trained any replacements before or after Defendant Buhannic fired him on August 2, 2010; on the contrary, he alleges that Buhannic himself hired and trained his replacements in the months before firing him.  SAC ¶ 50.  Moreover, this inference is facially implausible.  The Board could not expect Plaintiff to train a replacement if he had been assured that he would not be fired, and such an assurance would give Plaintiff no reason to train his replacement after he had been fired.  In any event, this generalized inference has no basis in the particular allegations of this case, and is potentially relevant to any situation involving a change in corporate leadership.  Therefore, Plaintiff's allegations do not support an inference of scienter with regard to the March 19, 2010 email, and his Section 10(b) claim fails with respect to the 100 shares purchased on March 25, 2010.

### ii.     Options to Acquire 42,125 Shares

During his time at TradingScreen, Plaintiff acquired options to purchase 42,125 shares of TradingScreen common stock. He acquired these options on April 1, 2005, April 1, 2006, and March 1, 2007. SAC ¶¶ 25, 61. In *Egan I*, this Court ruled that these transactions were not purchases of securities under Section 10(b) because they were inducements for him to continue his employment with TradingScreen, and only inducements for an employee to accept employment in the first place may constitute purchases of securities under the federal securities laws. 2011 WL 1672066 at *11. Plaintiff now claims in one paragraph of the SAC that he "earned and purchased" these stock options, SAC ¶ 26, but offers no factual allegations stating that the options were somehow purchased rather than granted by TradingScreen. He does not identify which options were allegedly purchased and which were granted, or the consideration that he paid for the options he allegedly purchased. Elsewhere, the SAC states that Plaintiff was "awarded" these options. SAC ¶ 61. Plaintiff does not plead new allegations claiming that his stock options were anything other than options awarded as employment compensation. Therefore, this Court reaffirms its holding that Plaintiff's options to acquire 42,125 shares are not purchases under Section 10(b).

### iii.     7,280 Shares Acquired in 2008 and 2010

In the FAC, Plaintiff alleged that he was granted shares of restricted common stock in TradingScreen on April 1, 2008, April 1, 2009, and March 2, 2010, totaling 67,280 shares. FAC ¶ 59. In response to this Court's holding in *Egan I* that these transactions were not purchases under Section 10(b), 2011 WL 1672066 at *11, the SAC alleges that two of these transactions were stock purchases. On April 1, 2008 he

13

allegedly purchased 5,135 shares for $78,000 of his bonus money, and on March 2, 2010 he purchased 2,145 shares for $44,000 of his bonus money, for a total of 7,280 shares.[4] SAC ¶¶ 29, 122.  To explain his new description of these transactions as purchases, Plaintiff claims that he was given the choice of receiving his bonus in cash, restricted common stock, or a combination of the two.  SAC ¶¶ 25, 29.  Plaintiff contends that because he used his cash bonus to purchase stock, these transactions constituted purchases of securities under Section 10(b).

Plaintiff's claims are without merit.  While some of Plaintiff's allegations in the Second Amended Complaint describe these stock transactions as purchases, *see, e.g.*, SAC ¶¶ 11, 122, 126, 128, other allegations continue to describe them as grants under the TradingScreen Stock Incentive Plan.  *See, e.g.*, SAC ¶ 63 ("Also under the Stock Incentive Plan, Mr. Egan was awarded 67,280 shares of restricted common stock . . .").  The simple substitution of "purchased" for "granted" in the SAC does not, by itself, transform stock grants into purchases within the meaning of Section 10(b).

Plaintiff's attempt to explain this substitution—his claim that he purchased the stock with his bonus money—also fails to adequately allege that these purchases are cognizable under the statute.  The proper inquiry for determining whether stock awarded as employee compensation is covered by Section 10(b) does not depend on the mechanism by which the employee elects to receive a percentage of his compensation as stock.[5]  Instead, it depends on whether the stock was offered as an incentive for an employee to accept employment.  As this Court held in *Egan I*, an acceptance of stock

---

[4] The remaining 60,000 shares Plaintiff originally described as Stock Grants, presumably acquired through the April 1, 2009 transaction, are discussed *infra* Part III.B.iv.

[5] Defendant TradingScreen has submitted an affidavit purporting to contain documents governing Plaintiff's executive compensation plans, as evidence against Plaintiff's claims.  For the reasons stated *supra* note 2, the Court disregards this submission.

14

options and grants in exchange for continued employment does not constitute the purchase of a security. 2011 WL 1672066, at *11 (citing *Dubin v. E.F. Hutton*, 695 F. Supp. 139 (S.D.N.Y. 1988); *Fishoff v. Coty*, No. 09 Civ. 628 (SAS), 2009 WL 1585769, at *6 (S.D.N.Y. 2009)). Therefore, Plaintiff's new allegations in the SAC merely establish that he had the ability to choose the percentage of his compensation awarded as stock grants or as cash. They do not change the fact that both his cash and stock grants were awarded as employment compensation under the Stock Incentive Plan—a fact he himself alleges. SAC ¶ 63. Accordingly, this Court reaffirms its holding that Plaintiff's receipt of stock grants from TradingScreen on April 1, 2008 and March 2, 2010 does not constitute the purchase of a security under Section 10(b).[6]

### iv. Remaining 60,000 Shares

In the Second Amended Complaint, Plaintiff offers a new theory of securities fraud to account for his remaining 60,000 shares. He now alleges that in September or October 2006, he was offered a position by the banking firm Crédit Agricole. In an effort to keep him at TradingScreen, Defendant Buhannic allegedly promised Plaintiff that he would be given an opportunity to acquire a significant amount of TradingScreen common stock. SAC ¶ 124. At some point thereafter, Plaintiff received 60,000 shares of common stock and became a partner of TradingScreen. *Id.* ¶¶ 28, 126. He alleges that Buhannic knew this misrepresentation was false at the time it was uttered. *Id.* ¶ 126.

---

[6] In litigating the first Motion to Dismiss in this case, Plaintiff argued that he acquired the Stock Options and Grants as part of the Employee Stock Incentive Plan when he was offered employment in 2003. While Plaintiff does not renew this argument on the instant motion to dismiss, the Court reaffirms its holding that to the extent Plaintiff acquired any stock options or grants in 2003, these cannot form the basis of a securities fraud claim because they were acquired before any of Buhannic's alleged misconduct took place. *Egan I*, 2011 WL 1672066, at *11.

15

Plaintiff is mistaken. He again attempts to draw an analogy with *Dubin*, which held that a plaintiff who accepted stock and stock options in conjunction with an offer of employment engaged in the purchase of a security. 695 F. Supp. at 146. He now argues that his acceptance of the 60,000 shares in exchange for rejecting the Crédit Agricole offer is analogous to accepting stock options in conjunction with a new offer of employment, rather than accepting stock options in exchange for continued employment. As discussed *supra* Part II.B.iii, only the former qualifies as a stock purchase under Section 10(b).

The rejection of an outside offer of employment to remain with one's existing employer does not amount to the acceptance of a new offer of employment under *Dubin*. The key to the inquiry in *Dubin* was that the plaintiff "did exchange something of tangible value—he changed his way of life and his job—in return for the stock and stock options" he received. *Id.* at 145. Here, Plaintiff did not change his way of life and his job in exchange for the 60,000 shares. Instead, he remained in the same job, and "continued employment is not a cognizable contribution" for the purchase of a security. *Fishoff v. Coty*, 2009 WL 1585769, at *6.

In sum, Plaintiff's Second Amended Complaint fails to adequately allege a claim of securities fraud under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5. Accordingly, Plaintiff's Fourth Cause of Action is dismissed.

### C. State Law Claims

"The district courts may decline to exercise supplemental jurisdiction over a claim" if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2). Having dismissed all of Plaintiff's federal

claims, this Court declines to exercise supplemental jurisdiction over the pendent state law claims, and will not reach the merits of those claims.

### IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted. The Clerk is directed to close the case.

SO ORDERED.

Dated: September 1, 2011
New York, NY

_____
U.S.D.J.

17